UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


ADVOCATES FOR ARTS-BASED               CIVIL ACTION
EDUCATION CORPORATION

VERSUS                                 NO: 09-6607

ORLEANS PARISH SCHOOL                  SECTION: "S" (3)
BOARD


### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Advocates for Arts-Based Education Corporation's Motion for Summary Judgment (Doc. #6) is **GRANTED**.

### BACKGROUND

Plaintiff, Advocates for Arts-Based Education Corporation ("Advocates") is a Louisiana nonprofit corporation. The Louisiana Charter School Demonstration Programs Law, LA. REV. STAT. §17:3971, *et seq.* (the "Charter Act"), permits parish school boards, such as defendant, the Orleans Parish School Board ("OPSB"), to contract with nonprofit corporations to operate charter schools. Advocates and OPSB entered into a Charter School Agreement (the "Agreement"), effective January 1, 2006 through December 31, 2011, under which Advocates operates the Lusher Charter School in Orleans Parish, Louisiana. Pursuant to the Agreement, OPSB pays Advocates, in monthly installments, the estimated Annual Funding Amount OPSB receives from the State of Louisiana,

Department of Education, for each child attending the school. The Agreement also provides that Advocates "will not pay administrative fees to OPSB other than those provided for in such cooperative endeavor agreements as may be entered into by OPSB and [Advocates]."

In 2009, the Louisiana legislature, by Act No. 292, amended Louisiana Revised Statutes §17:3995(A)(4)(a) to authorize a parish school board annually to charge administrative fees to charter school operators in an amount equal to two percent of the total state-funded per pupil amount. Pursuant to Act No. 292, since August 1, 2009, OPSB has deducted a two percent administrative fee from the monthly installments of state per pupil funds that it pays to Advocates. The monthly amount deducted is $8,903. If OPSB continues to apply the deduction, OPSB will withhold more than $360,000 over the life of the Agreement.

Advocates filed this action pursuant to 42 U.S.C. §1983, alleging that OPSB's application of Act No. 292 to the Agreement substantially impairs Advocates' rights under the Agreement in violation of the Contract Clause, Article I, Section 10 of the United States Constitution. Advocates seeks: (1) a declaratory judgment that Act No. 292 cannot be retroactively applied to the Agreement; (2) an injunction preventing OPSB from applying Act. No. 292 to the Agreement; (3) damages in the form of the withheld administrative fees, plus interest thereon; (4) attorneys' fees; and, (5) costs.

Advocates moved for summary judgment arguing that there are no material issues of fact regarding its entitlement to such relief. Advocates contends that it is not a political subdivision of the state, and has standing to bring an action under 42 U.S.C. §1983. Advocates also argues that because OPSB's continued deduction of the two percent administrative fee will amount to over $360,000 in funds Advocates will not receive such deduction substantially impairs Advocates'

2

contractual rights under the Agreement in violation of the Contract Clause. Finally, Advocates argues that OPSB is deducting the administrative fees for its own financial benefit, which is not reasonable and necessary to serve an important public purpose.

OPSB opposes the motion, arguing that as a charter school operator, Advocates is a political subdivision of the state or a state actor that does not have standing to bring a §1983 claim. Essentially, OPSB argues that charter school operators are political subdivisions or state actors because charter schools are created by the state and perform the governmental function of public education. OPSB also argues that there is no substantial impairment because even with the two percent deduction, Advocates continues to receive $445,150 per month, and will receive $16,100,000 over the life of the Agreement. Finally, OPSB argues that even if Act No. 292 creates a substantial impairment of the Agreement, the deduction serves the legitimate public purpose of facilitating OPSB in performing its administrative responsibilities over the charter school.

## ANALYSIS

**1.    Standing**

Contract Clause rights fall within the protection of §1983. Dennis v. Higgins, 111 S.Ct. 865, 872 (1991); McGuire v. Sadler, 337 F.2d 902 (5th Cir. 1964). Section 1983 provides in pertinent part that:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the depravation of any rights privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

A corporation has standing to bring an action under §1983 for its own damages. Discovery House v. Consolidated City of Indianapolis, 319 F.3d 277, 282 (7th Cir. 2002) (citing Adams v. Park Ridge, 293 F.2d 585 (7th Cir. 1961); RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1057, n.7 (9th Cir. 2002); Advocates for the Arts v. Thomson, 532 F.2d 792, 794 (1st Cir. 1976). However, a political subdivisions of a state, such as a school district, does not have standing to bring a §1983 action. See Board of Levee Comm'rs of the Orleans Levee Board v. Huls, 852 F.2d 140, 142-43 (5th Cir. 1988); see also City of Trenton v. State of New Jersey, 43 S.Ct. 534, 538 (1923); see also Delta Special School Dist. No. 5 v. State Board of Educ. for the State of Arkansas, 745 F.2d 532, 533 (8th Cir. 1984). State law determines whether an entity is a political subdivision of the state. Delta Special School Dist. No. 5 v. State Bd. of Educ. for the State of Arkansas, 745 F.2d 532 (8th Cir. 1984).

Under Louisiana law, Advocates is not a political subdivision of the state. Article 6, Section 44 of the Louisiana constitution defines a "political subdivision" as "a parish, municipality, and any other unit of local government, including a school board and special district, authorized by law to perform governmental functions." Advocates is a nonprofit corporation, which does not fit the definition of a political subdivision.

The Louisiana Attorney General has opined that a charter school is not a political subdivision. The referenced Attorney General Opinion stated in pertinent part that a "charter school is an independent public school that is operated pursuant to a charter between a nonprofit corporation and the Board of Elementary and Secondary Education . . . [a] charter school is not a

political subdivision of the state. . ." LA. ATTY. GEN. OP. NO. 04-0317, 2004 WL 2843115 (La. A.G. 2004).

Moreover, the Charter Act provides that charter schools must be organized and operate as self-governing nonprofit corporations. LA. REV. STAT. ANN. §17:3991(A)(1)(a). A charter school's distinction from other public schools is further evidenced by the Charter Act's exemption of charter schools from all public laws and regulations except as otherwise provided. LA. REV. STAT. ANN. §17:3996.

The fact that the charter school performs a governmental function does not make it a political subdivision of the state. The Supreme Court has stated that "a private entity perform[ing] a function which serves the public does not make its acts state action." Rendell-Baker v. Kohn, 102 S.Ct. 2764, 2772 (1982). Thus, under Louisiana law, Advocates is not a political subdivision of the state, and has standing to pursue its claim under §1983.

**2.      The Contract Clause**

Advocates contends that the retroactive application of Act No. 292 to the Agreement violates, Article I, Section 10 of the United States Constitution, which states in pertinent party that: "[n]o State shall . . . pass any . . . *ex post facto* Law, or Law impairing the Obligation of Contracts . . ."

If a law impairs a state's own contracts such impairment "face[s] more stringent examination under the Contract Clause than would laws regulating contractual relationships between private parties." Allied Structural Steel Co. v. Spannaus, 98 S.Ct. 2716, 2722, n. 15 (1978) (citing United States Trust Co. of New York v. New Jersey, 97 S.Ct. 1505, 1518 (1977)). When evaluating an

5

alleged Contract Clause violation, the court inquires whether the state law has in fact operated as a substantial impairment of a contractual relationship. Gen. Motors Corp. v. Romein, 112 S.Ct. 1105, 1109 (1992) (citing Allied Structural Steel Co., 98 S.Ct. at 2722; Energy Reserves Group, Inc. v. Kansas Power & Light Co., 103 S.Ct. 697, 704 (1983)). The three components to determining whether a state law has operated as a substantial impairment to a contractual relationship are: (1) whether a contractual relationship exists; (2) whether the change in the law impairs the contractual relationship; and (3) whether the impairment is substantial. Id., 112 S.Ct. at 1109-10.

It is undisputed that Advocates and OPSB had a contractual relationship. It is also undisputed that Act No. 292 impairs the contractual relationship between Advocates and OPSB by imposing an administrative fee where one did not previously exist. Thus, the pertinent inquiry is whether the impairment is substantial.

### A.  Substantial Impairment

Complete destruction of contractual expectations is not required for finding substantial impairment. Energy Reserves Group, Inc., 103 S.Ct. at 704 (citing United States Trust Co. of New York, 97 S.Ct. at 1519-20). A "regulation that restricts a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment." Id. (citing United States Trust Co. of New York, 97 S.Ct. at 1522). Further, the court should also consider which terms of the contract are affected by the law, and the duration of the effects. Lipscomb v. Columbus Mun. Separate School Dist., 269 F.3d 494, 504 (5th Cir. 2001) (citing Allied Structural Steel Co., 98 S.Ct. at 2723-24). The extent of the impairment is determined in light of "whether the industry the complaining party has entered has been regulated in the past." Energy Reserves Group, Inc., 103

S.Ct. at 704 (citing Allied Structural Steel Co., 98 S.Ct. at 2721). "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them." Id. (citing Hudson Water Co v. McCarter, 28 S.Ct. 529, 531 (1908)).

The impairment to the Agreement is substantial. The Agreement specifically provides that Advocates "will not pay administrative fees to OPSB other than those provided for in such cooperative endeavor agreements as may be entered into by OPSB and [Advocates]." Since August 1, 2009, OPSB has charged Advocates a two percent administrative fee from the per pupil amount that OPSB owes to Advocates, amounting to $8,903 per month, and will total more than $360,000 over the life of the Agreement. Further, the Agreement's prohibition of OPSB's charging an administrative fee was bargained for in the execution of the Agreement and is not an attempt to contract around state restriction. Prior to the passage of Act No. 292, Louisiana Revised Statutes §17:3995(A)(4)(a) permitted school boards to charge such an administrative fee during a charter school's application period and first year of operation. The amendment permits a school board to charge an administrative fee annually. It does not mandate charging such a fee, but rather permits it. Thus, OPSB's withholding of $360,000 is a substantial impairment to the Agreement.

### B. Legitimate Public Purpose

OPSB contends that the administrative fee is reasonable and necessary to serve the legitimate governmental purpose of overseeing the public schools.

The state may justify the imposition of an administrative fee if there is a "significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem," even where there is a substantial impairment to a contractual relationship.

Energy Reserves Group, Inc., 103 S.Ct. at 704-5 (citing United States Trust Co. of New York, 97 S.Ct. at 1517; Allied Structural Steel Co., 98 S.Ct. at 2723-2725). Requiring a legitimate public purpose ensures that the state is exercising its police power, instead of providing a benefit to special interests. Id. at 705. The level of impairment dictates the amount of scrutiny applied to the state law. Lipscomb, 269 F.3d at 505.

Once a legitimate public purpose is identified, the court asks whether the change in "the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption." Id. (quoting United States Trust Co. of New York, 97 S.Ct. at 1518). When the state is a party to the contract, it cannot simply abandon its financial obligations, and "complete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-interest is at stake." Id. (quoting United States Trust Co. of New York, 97 S.Ct. at 1519). The court should first determine whether the contract implicates "an essential attribute of [the State's] sovereignty." Lipscomb, 269 F.3d at 505 (citing United States Trust Co. of New York, 97 S.Ct. at 1518). If it does, then the Contract Clause does not prevent the state from impairing such an obligation. Id. (citing United States Trust Co. of New York, 97 S.Ct. at 1518). However, purely financial obligations do not impact a state's sovereignty, and are subject to the Contract Clause. Id. If the substantial impairment is subject to the Contract Clause, the court determines "whether the impairment is 'reasonable and necessary,' without giving 'complete deference' to the legislature's judgment." Id. (citing United States Trust Co. of New York, 97 S.Ct. at 1518).

OPSB's charging an administrative fee to Advocates is not reasonable or necessary for the overseeing of public schools. By entering into the Agreement, OPSB assumed the responsibility of overseeing Advocates' actions in running the Lusher Charter School. The Agreement specifically prohibits OPSB from charging Advocates an administrative fee. When it entered the agreement OPSB had the responsibility to oversee the charter school, and contracted away its right to charge an administrative fee. OPSB's imposition of an administrative fee *ex post facto* to do nothing other than what it originally contracted to do, is simply an attempt to reduce its financial obligations to Advocates. Thus, the administrative fee is not reasonable or necessary for a legitimate governmental purpose.

## CONCLUSION

**IT IS HEREBY ORDERED** that Advocates for Arts-Based Education Corporation's Motion for Summary Judgment (Doc. #6) is **GRANTED**.

New Orleans, Louisiana, this  26th  day of January, 2010.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**